ALEXANDER THOMPSON *vs.* HOLYOKE STREET RAILWAY COMPANY.

Hampshire.   October 19, 1897. — February 28, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Street Railway — Negligence — Law and Fact — Instructions.*

No exception lies to the refusal to give instructions in the language requested, if they are covered substantially by those given.

In an action against a street railway corporation for personal injuries sustained by the plaintiff in consequence of his horse becoming frightened through the alleged negligence of the defendant's servants in the management of a car, although the evidence for the plaintiff tends to show that the horse was unsuitable to be driven in a street in which electric cars ran, and that he either knew it or ought to have known it, yet if this court, taking all the evidence together, cannot say that such were the facts, as matter of law, or that it was not properly left to the jury to determine what the facts in this respect were, a verdict for the plaintiff will not be disturbed.

TORT, for personal injuries sustained by the plaintiff in consequence of his horse becoming frightened, through the alleged negligence of the defendant's servants in the management of a car.   At the trial in the Superior Court, before *Dewey,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.   The facts appear sufficiently in the opinion.

*W. H. Brooks & W. Hamilton,* for the defendant.

*A. L. Green,* for the plaintiff.

FIELD, C. J.   The difficulty in dealing with this case comes from the conflict of evidence.   If the evidence on behalf of the defendant is true, there was, we think, no sufficient evidence of the negligence of the servants of the defendant.   If the evidence on behalf of the plaintiff is true, there was evidence of negli-

gence on the part of the motorman in not stopping or checking the speed of the car, but the evidence leaves it doubtful whether the plaintiff was shown to be in the exercise of due care. On the defendant's evidence, the car was going slowly over the frogs, and there was nothing in the appearance of the plaintiff's horse that indicated fright until the horse was just about to pass the car, when he shied and threw the plaintiff out. The plaintiff's evidence was that the horse was a young high spirited horse, which the plaintiff had owned only five days, and which he had driven only two or three times before; that the horse showed signs of fear when he first saw the car, three or four hundred feet away, and that from that time until the accident occurred the horse was rearing, shying, and plunging about, of which the motorman, although the horse was in plain sight, took no notice; and that the motorman did nothing to stop or check the speed of the car.

There was testimony that the person who sold the horse to the plaintiff told him that the horse had been afraid of electric cars, and had started at the sight and noise of such cars; but the plaintiff denied that he had been told this. If the plaintiff's evidence is true, it is manifest that he must have known that it was dangerous to attempt to drive the horse past the approaching car in the condition of fright he was in, but it is not easy to say with confidence what he could have done with safety, as the horse seems to have been partly beyond his control. How much the plaintiff knew or ought to have known of the character of the horse before he got in a position of some danger is not very clear.

The defendant contends, among other things, that the court should have given the sixth, seventh, ninth, and tenth requests for instructions.* With respect to the subjects of these requests the court charged the jury as follows:

---

* These requests were as follows :

" 6. If the plaintiff was driving a horse unused to electric cars and which was liable to shy at them, and the plaintiff had been informed with reference thereto, and the accident to the plaintiff was caused by the shying of said horse at an electric car of the defendant, then the plaintiff was not in the exercise of due care, and cannot recover.

" 7. If the plaintiff's horse was unused to electric cars and liable to shy

"Looking at his [the plaintiff's] side of the case first, he must satisfy you that no failure to use the care of men of ordinary intelligence and prudence contributed as a proximate cause to bring that injury upon him.  What does that include?  Of course it includes his own conduct at the time and place of the accident, and immediately preceding that accident.  It includes the manner of driving, selecting the place where he would go, handling his horse, and all that took place there, so far as his part of it is concerned.  It includes the question of the character of the horse he was driving.  He was bound to use reasonable and ordinary care to have a reasonably safe and suitable horse to drive, to drive with reference to the locality over which he was going to drive, and intended to drive.

"A horse may be safe and suitable to drive on an ordinary country road that may not be suitable and safe to drive through the streets of a city where a street railway is located.  Therefore, in dealing with that question, you have to look at Mr. Thompson's conduct by the evidence.  What kind of a horse was this?  How old a horse?  What was his temper and spirit?  What did Mr. Thompson know about him by information from the party that he bought him of?  What had he seen of him?  How much had he used him, and under what circumstances?  Taking all those things together, was it the conduct of a man of ordinary prudence and care to hitch up this horse in the way he did in his wagon, and, taking in four people, drive him along this street where this railroad was being operated?  He was bound to act like a man of ordinary reason and prudence in

at them, and the plaintiff knew, or by the exercise of reasonable care should have known of that fact, and if the driving of said horse was under the circumstances negligent, the plaintiff is not entitled to recover. . . .

"9. If the plaintiff knew, or by the exercise of reasonable care should have known, that his horse was unused to street cars and liable to shy at them, and the plaintiff had the opportunity of selecting another street, over which the street cars did not run, to travel to his destination, then the plaintiff was not in the exercise of due care in selecting the route which he did select.

"10. If the seats of the plaintiff's wagon were insecurely and not safely fastened, and the plaintiff knew or in the exercise of due care might have known thereof, and if their being insecurely and not safely fastened contributed to the causing of the plaintiff's injuries, then the plaintiff cannot recover, and the verdict should be for the defendant."

view of the information that he had, — in view of the opportunities of observation that he had. If the horse was not reasonably safe and suitable to drive, and he should have known it, and if the character of the horse contributed to the injury, that would be imputed to him and prevent his right of recovery. Of course if a man is driving a horse which it is consistent with due and ordinary care to drive, a horse that he knows about, and that has been a reasonably safe horse to drive under similar conditions, and unexpectedly on a given occasion the horse becomes frightened and conducts himself differently from what he ordinarily has and brings on an accident, that would not necessarily prevent him from recovering, supposing the other party is at fault, because in that case the jury might not find he was guilty of negligence. We all know that it is possible, perhaps not probable, but possible, that a horse ordinarily safe and suitable, and known to be so, may, on some particular occasion, become excited or frightened, when there was nothing in his previous history and conduct to lead one to expect it, so that the mere fact, in and of itself, that a horse behaves improperly does not necessarily establish the negligence of the owner and driver. It is a fact to be considered, but if the horse was of an unsafe character, unsuitable for the use and purpose, and if the owner and driver knew it, or reasonably ought to have known it, and then the horse conducted himself improperly and brought on an accident, the plaintiff could not recover.

" Well, the same thing is true in regard to the wagon. Our Supreme Court, in speaking of a case against a city, say, ' That principle is that, in order to recover of the town for a defect in its highway, the traveller must not only drive with due care and skill, but he must be using a proper horse and vehicle, with strong and suitable harness.' So you see the obligation of care covers a proper horse and vehicle and harness, and then covers using due care in driving. Well, now as to this question of a vehicle, there has been some evidence in regard to the seats, whether they were fastened at all, or, if there was any attempt to fasten them, whether it was done with reasonable and ordinary care. If they were not fastened, and if reasonable and ordinary care on the part of Mr. Thompson required that they should have been, and if their not being fastened contributed to

this injury, then that would prevent his recovery.   If they were in that unfastened state through any want on his part of reasonable and ordinary care, and that unfastened condition contributed to this accident, that, upon general principles, would prevent his recovery, because, as you see from what I read from the decision of the Supreme Court, due care required that he should have a suitable and proper horse, harness, and vehicle, and be driving with due care."

It seems to us that in the charge the presiding justice substantially gave the instructions requested.   The court apparently followed the decisions in *Benjamin* v. *Holyoke Street Railway*, 160 Mass. 3, and in *Ellis* v. *Lynn & Boston Railroad*, 160 Mass. 341.

The evidence on behalf of the plaintiff certainly tends to show that the horse was in fact unsuitable to be driven in a street in which electric cars ran, and that the plaintiff either knew it or ought to have known it.   Still, taking all the evidence together, we cannot say this as matter of law, or that it was not properly left to the jury to determine what the facts in this respect were. The other requests for instructions need not be noticed.   We find no error of law in the exceptions.

*Exceptions overruled.*